Good afternoon and welcome to the Ninth Circuit. We have four matters on the docket this afternoon. Two of them are submitted, City of Oakland v. BP, PLC, and Castellanos v. City of Reno. So our first case to be argued is Wesco Insurance Company v. Brad Ingram Construction. I would just say if you want to reserve time for rebuttal, please let us know and we'll do our best to try to give you a cue and watch your time. The time showing on the clock is your complete time, so make sure that you're watching that. Come on up. Thank you. Good afternoon. I'm Noreen Evans for Brad Ingram Construction. And just for the record, I'd like to note that Mr. Ingram is here in the courtroom with me. I would like to reserve three minutes of my time for rebuttal. And I would really like to spend my time addressing the issue that the court asked the parties to address. And that is the question of whether the case or any question in the case should be certified to the California Supreme Court. And just as a very simple answer, my answer would be yes. I believe that it is an appropriate case to be certified to the California Supreme Court, and I can discuss why. With respect to a couple of issues that I think the California Supreme Court should be deciding, because there is no controlling authority from that court. Why do you think that McKinnon isn't enough authority? Ah, excellent question. Actually, Your Honor, I think we did give sufficient discussion with respect to the holding in McKinnon v. Trek Insurance for this court to find that the pollution or the debris and dust left behind by a wildfire is not something that would be traditionally commonly considered traditional industrial environmental pollution. And if you look at McKinnon... Well, they didn't say traditionally. They said, as my understanding, they said what a lay person would think of as... Commonly considered. Correct. Correct. They did use the terms traditional and the word industrial in various places throughout the decision. But the McKinnon court even acknowledged that its definition of what might commonly be considered environmental industrial pollution could be subject to further clarification. But if you look at all of the cases, McKinnon itself and cases decided after McKinnon, there are no facts such as we have here. The differentiating fact in this case is the polluting event was the wildfire. And if you read the underlying complaint carefully, which I'm sure this court has done, there is no allegation that Ceres Environmental, who was the state's prime contractor and hired Mr. Ingram as a subcontractor, there is no allegation that any of the parties negligently handled any of the fire debris or dust, or that any of the parties negligently created dust, or that any of the parties did anything that negligently created any of these clouds of dust that were alleged to have entered Mr. Vargas' truck cab. So there's this causal element that's missing between what Mr. Ceres Environmental is alleged to have done and the polluting event, which was the fire, the wildfire. And in every case subsequent to McKinnon, that the polluting act was actually an act of the insured. And in those cases, the courts have discussed the definition of what's commonly considered environmental industrial pollution within the context of an act of the insured. And in this case, what Mr. Vargas' complaint alleges is that there was dust on the workplace, which, I mean, you can't clean up a wildfire without dust being present. And the presence of that dust gave rise to a duty to warn Mr. Vargas of the potential of toxins in the dust, and a duty to provide him with protective equipment, which duty was breached, allegedly, by Ceres, who then cross-complained against Mr. Ingram. But there's no allegation that any party did some negligent act that caused the pollution. So what's missing in this case is an act of the insured that created pollution. Now, the district court judge did find that there was a release of pollution, but there are no facts alleged in Mr. Vargas' complaint that would support that conclusion. So we do think that we've given this court sufficient authority to decide that a wildfire is not what would commonly be considered pollution. Does it make a difference in this case that it's now a duty to defend case rather than a duty to indemnify in terms of certification? The reason I ask is obviously they're different. Duty to defend is broader and just requires a potential for coverage. So why would we ask the California Supreme Court about a potential for coverage rather than deciding the coverage question? Well, I think that if you were to decide that this is not what's commonly considered pollution under the McKinnon definition, there would be no reason to certify it. If you lean towards not making that decision, I think that would be a decision more properly made by the California Supreme Court, because there is, if the court were to decide McKinnon's not controlling, there is no other controlling authority decided by the California Supreme Court, and that's the reason for certification. The odd thing to me on the question of commonly considered pollution is obviously dust is considered a pollutant under the Clean Air Act and under California statutes, and near this wildfire in the San Joaquin Valley, it's a designated area where of dust control from agricultural operations. So if you're looking at commonly considered is dust or mixed dust commonly considered a pollutant, I think in environmental law probably the answer is yes. How does that affect you? Well, the McKinnon court acknowledged that almost anything could be considered a pollutant or an irritant, which is part of the definition of a pollutant. And so it decided that that was not the test that needed to be applied. The test that needed to be applied was, is this something that is commonly considered a pollutant? So that's the reason for my question, is that if it's considered a pollutant under federal and state law, why isn't it commonly considered a pollutant? Because this is a natural event, and that's the difference that I was trying to describe when I was talking about the cases McKinnon and decided under McKinnon. There are no cases that address what we have here, which is a polluting event being a naturally caused event, not something caused by the active and the insured. That would make more sense to me if you were talking about people who are perhaps fighting the fire or whatever, and ash and dust is falling as the fire is burning. But what we're talking about here is a remediation activity where the fire is done, the dust and debris and all of that is there, and it's now being disturbed through a non-natural process, through human efforts. So why isn't that a distinction that matters? Well, because to conclude that the dust and debris is being disturbed, one would have to assume that it is in a non-disturbed state following this natural event of a wildfire. And I think we've talked about that in our reply brief. It's not. It's laying out in the open. It's open to all of the natural elements, including wind. So it's not just that there's human activity coming onto the footprint of the wildfire and cleaning it up. The polluting activity or the creation of the pollution in every other case was as a result of a negligent act of the insured. In this case, what we have in front of us is the polluting event, and I'm assuming that it's a pollution for the sake of discussion, but I'm not conceding that. Assuming it's a pollution, the polluting event was a natural event. It was an act of nature. It was not an act of the insured. And one of the reasons I think that's really important is because you can't read the pollution exclusion in a vacuum. The pollution exclusion has to be read in the context of the entire policy, and the policy provides coverage in the insuring agreement. It provides coverage for acts of the insured. So... Well, hold on. I want to go back to that point because I think I really struggled with that, thinking about the coal case. And the difference in that is over the course of millions of years, they hardened this, you know, rock or whatever, and then they were sandblasting it. And then, you know, silica came out, and then that caused the environmental issues. Why is this not similar to that, except that this was a fire that happened, ash happened, and it just happened immediately after the incident? Just the fact that in the other case, it just happened over the course of millions of years, and it was there. It was still disturbed, and wasn't it the same here where it was disturbed in the, you know, cleanup efforts? Well, there's no allegation in this complaint that there was any negligent disturbance of the dust. And I believe the court is talking about the Garamendi case, which is the silica blasting case. In that case, the creation of the silica dust was caused by the insured sandblasting. So there was an act of the insured that created the pollution. We don't have an act of the insured that created the pollution here. What the district court found was that the insured released pollutants by moving the dust around. But there's no allegation that Mr. Ingram or Ceres negligently moved any dust. The dust is there. It's a fact of life. So where do you read a causal nexus requirement in the insurance policy? That's where the insuring agreement comes in. Well, right, but, you know, when you exclude, say, property damage, there are certain types of property damage that are excluded regardless of causation. Right. So, no, I understand. I mean, basically, they're insuring you, and there's the insuring clause. They have the burden on the exclusion, but the exclusion, I don't think, necessarily has to relate to causation. Well, I'm not sure about property policies. I don't read that in the exclusion. It just says it's any cost, loss, expense arising out of, and then it goes down to describe pollution. And I'll have to say I struggled with that concept as well, particularly trying to outline how I wanted to address this, because it is a somewhat complicated issue. And this was discussed in the Liberty Surplus case, which was discussed in Wesco's answering brief, and it was touched upon in our reply brief, but I think I'd like to expand on it. Liberty Surplus, in Liberty Surplus, the California Supreme Court addressed this very issue when it determined what is the meaning of occurrence in the insuring agreement. And in Liberty Surplus, there was an event that occurred subsequent to the insured's alleged acts of negligence. But Liberty Surplus talked about an earlier California Supreme Court case, Delgado. And in Delgado, there had been an antecedent event, such as we have here, the antecedent event being the fire. And in determining whether there was an occurrence for the purposes of the insuring agreement, the Supreme Court said in both of those cases the beginning and the end of the analysis is with the insured's alleged act of negligence. So you don't look at what happened before the insured's act of negligence. And here, it's the wildfire that created the pollution prior to the alleged acts of negligence. The alleged acts of negligence had nothing to do with creating dust, moving dust. Right, but even though leaving the exclusion out, you have coverage, likely because it's a duty-to-warrant case and so forth. Correct. But it excludes certain events afterwards, and that is any loss that is resulting from pollution, which this is, if you accept that dust is a pollutant. But so the interpretation that WESCO is urging of its pollution exclusion... Do you have a case, though, that talks about causation requirements? Well, this is, again, this is another reason why I think it's appropriate for certification to the California Supreme Court. I think the California Supreme Court addressed this in Liberty Surplus and Delgado, but only with respect to the definition of an occurrence, not with respect to the application of the exclusion here. I think that the reasoning would be the same, but then, of course, that would be up to the California Supreme Court. So that was the other reason why I thought this was appropriate for certification. There's a lot of issues here that I think have some ramifications beyond just this case. And as I'm sure the court is fully aware, we are in an era of climate change, and California continues to experience these massive wildfires that burn down communities, and they have to be cleaned up. Somebody's got to do that. So the state at this point has been taking on that responsibility. And I think if there's going to be a decision that severely impacts whether or not a small debris removal contractor, such as Mr. Ingram, is covered for the removal of fire debris, that's something that potentially has statewide implications and could potentially impact the state in continuing to clean up these wildfires. So those are the reasons I think that this case really should be certified to the California Supreme Court. I think the one thing I did want to address, though, on that same issue, is WESCA's interpretation of its exclusion essentially overturns California law with respect to the duty to defend, because usually an insurer has a duty to defend until it can show there is no potential for coverage. In this case, WESCO is saying we never have a duty to defend under any circumstances. And the reason I've asked this court to take judicial notice of the fact that it was determined Mr. Vargas' sarcoidosis was not caused by the wildfire pollution is because it shows the fallacy of WESCO's argument. They say even if there wasn't any potential that our pollution exclusion would apply because it wasn't caused by pollution, we still don't have the duty to defend. So essentially, the insured is now put in the position of proving there's no possibility, the exact opposite of what its burden would normally be, which is to show that there is a potential for coverage. Now, Mr. Ingram has to show there is no potential that there won't be coverage. And that's just not the state of California law. Can you tell me what the status of the underlying case is? Is it on appeal? Not at this point, no, Your Honor. It remains in the trial court. So if there are no other questions, I'd like to reserve my additional time for rebuttal. Thank you. Good afternoon, Your Honors. My name is Dan Kadabaugh. I am counsel for appellant WESCO Insurance Company in this case. Before getting into the points that I had outlined, I would ask of the panel, Ms. Evans and Mr. Ingram, they did not request any issue of certification of the California Supreme Court. No, we re-raised the issue. Yes, you did. And I noticed that it simply put the counsel on notice of being prepared to discuss the issue of certification without indicating a specific question that the panel wanted to ask of the court. Do you favor it or not? I do not favor it, Your Honor, and there is a reason for that. I think if we look at what McKinnon says, the answer in this case is exceedingly obvious. So McKinnon established the broad standard for how to apply a pollution exclusion under California law. And what McKinnon says is that when you read the exclusion in context, the objective words indicate that what is barred from coverage is environmental pollution. So the words of the exclusion convey that. If we look at the record, we see what McKinnon means. The original pollution exclusion in WESCO's policy that was replaced by the endorsement that was litigated in this case appears in the record at the second volume of the excerpts, page 231. What it bars coverage for is a bodily injury. There's six conditions on which this exclusion applies. I'm looking at number five. It's clause E. It's on the bottom right corner of page 231. What is barred from coverage by this provision is bodily injury arising from the discharge, the dispersal, seepage, migration of pollutants, quote, at or from any premises, site, or location from which an insured or its contractors or subcontractors are performing operations if the operations are for, including, to test for, monitor, clean up, or remove pollutants. That is precisely what was alleged in the underlying lawsuit by Mr. Vargas. What he said is that he was a subcontractor driving a truck and that he was exposed to pollutants in the form of contaminated dust over and over and over again at this job site that was to clean up and remove pollutants. Those allegations are squarely barred by this pollution exclusion. Now, granted, this exclusion was replaced in the policy by the endorsement that we've been litigating. That appears in the record at second volume of the excerpts, page 267. As the panel is aware, it simply says that there is no coverage for bodily injury that would not have occurred in whole or in part but for the actual alleged or threatened discharge of pollutants. We know from the Garamendi v. Golden Eagle Insurance Company case, this exact pollution exclusion is, quote, far broader than the original exclusion that it replaced. So if we have an original exclusion, the one that McKinnon litigated and created the standard for, that squarely applies to the allegations in the underlying lawsuit, and we have a far broader exclusion that is in place in this case. But in McKinnon, I guess, wasn't the Supreme Court telling us in McKinnon, you can't look at whether or not we're dealing with something that is considered, in that case, pesticides, which would be dangerous and would qualify. You have to look at both the other part of it, the removal. They want us to look at both of those concepts together, not just say that one is a pollutant and, therefore, it would qualify or not qualify. Don't we have to look at those things together? That's correct, Your Honor. What McKinnon says about reading an exclusion or any provision in context is that you take all of the words of the provision. So what McKinnon is saying is that when you have the words release, discharge, dispersal, seepage, migration, those are terms of art of environmental law. And then when you use those in conjunction with the phrase pollutant, what that objectively conveys is that a pollution exclusion like WESCO's or like any other insurer's bars coverage for acts of environmental contamination. Would a layperson in California think that this would be considered an environmental pollutant in the same way that the McKinnon court thought? Sure. So when you talk about what a layperson would understand in an insurance law, Your Honor, under California law, you have to be guided by the words policy. So that's what the California Supreme Court is talking about when it says, would a layperson objectively understand this? That is first dictated by what the policy says. Here, as we just discussed, the policy originally said that pollutants released at a job site where the operations are specifically for the purpose of removing pollutants, cleaning up pollutants, is an excluded release of pollutants. I'm struggling to find a way in which to phrase that, that it would not apply squarely to what Mr. Vargas alleged. So if we look at that language, I think an insured would only have one reasonable expectation, and it would be that objectively, operations to clean up millions of tons of contaminated debris is handling a pollutant. And when you have a worker at the site who says, I was negligently exposed to these things because I was not given respiratory equipment, I was negligently exposed to clouds of polluted dust, that is what an insured reading this policy and reading the allegations against them would think of as pollution. But in the traditional sense, wouldn't a person, layperson think, oh, no, when they're talking about pollutant, what they're talking about, you know, the classic puffs of smoke going up into the air being pollutant in that sense, or, again, asbestos in some material, that's what they think of pollutant, don't they? I mean, do they think that ash on the ground is in the same way that those things are thought of, that a layperson would think? Well, a layperson would certainly think those things are environmental pollution. But if we look to California Court of Appeals post-McKinnon that have construed its environmental pollution framework, there's a case from, I believe, 2007. It's called Cold Creek Compost versus State Farm. In that case, it was a commercial composting operation that made some bad smells, and some people that lived next to the composting operation didn't like the way it smelled, and some dust got on their property. The Court of Appeal in that case said this is environmental pollution under McKinnon's framework. The Supreme Court was given a chance to depublish that opinion, and it was taken up on a petition for review, and they denied review. So the court could have said, no, this is wrong, but they didn't. There's another case, I believe it's Ortega Rock Quarry, where a quarry operator dumped uncontaminated dirt into a creek bed, and that was found to be a pollutant, because as Judge Thomas was talking about when Ms. Evans was speaking, under federal and state environmental laws, dirt dumped into a creek bed in certain circumstances is a pollutant. So when we talk about what an insured would reasonably expect, yes, a lot of people think when you hear pollution, you're thinking Superfund sites, you're thinking the Love Canal, Stringfellow Acid Pits down in Southern California, and those would certainly be excluded. But it's a much broader concept. But those examples you provided are things where this thing that ultimately is a pollutant was sort of processed by one of the parties. Here, that really didn't happen, did it? Well, the handling of the pollutant was by the parties. The party didn't create the pollution. The initial pollution was absolutely created by the campfire. Well, then what about her argument that this was a natural disaster that occurred, that it needs to be certified so that the Supreme Court in California can tell us whether or not this would be considered? Having wildfires in this state, they're very destructive for the last 20 years, Your Honor, and nobody's ever bothered to tell the Supreme Court this. The Supreme Court's given no indication it needs to resolve this issue because of climate change or for whatever other causes there are for wildfires. What we have to do is look at the words of the exclusion. Do we reasonably expect that if there's pollutants created by a fire and then we pick them up and we negligently handle them and cause them to further go out into the environment that that isn't also pollution? That's what this clause says. That's what McKinnon clearly contemplated under its standard. Well, what do we make of, since we're talking about policies, that, as you know, because you've studied this, the pollution exclusion has a long history, and courts have taken a lot of different approaches to the pollution exclusion. And I think in 2015, the Insurance Services Office, which publishes the ISOs for the Comprehensive General Liability Policy, because there was uncertainty, put out a mixed-dust exclusion, which seems to me that would apply probably to this case. But given that, it would seem that they thought, ISO thought pollution exclusion wasn't specific enough to cover it mixed-dust. Not at all, Your Honor. I believe it's the Garamendi v. Golden Eagle case addressed a very similar argument to that. That's the sandblasting silica case. And what the insured in that case argued is that because there was also a silica-specific exclusion in the policy, that clearly nobody could read the pollution exclusion and think that it also barred coverage for silica sandblasting. And the court said, no, that's not true. You can have two exclusions that apply to the same loss and also have different, you know, they expand differently, but they can also intersect and both apply to something. So, I mean, the question for me in this case is because it's a duty-to-defend case, all they have to show is the potential for coverage. And given McKinnon and some uncertainty in California law, why isn't that enough? Can you repeat that, Your Honor? I didn't quite hear you. Well, it's now a duty-to-defend case. It's not a duty-to-indemnify case. So a lot of your argument is focus on what would be a duty-to-identify, which I get. But duty-to-defend, all I have to show is the potential for coverage. And in California, unlike some other states, McKinnon seems to say, well, you have to look at the eye of the beholder. The cases seem to go back and forth. Why isn't that enough to create a potential for coverage, thereby triggering the duty-to-defend? Your Honor, under California law, the potential for coverage standard that governs the duty-to-defend is you look at the pleadings, the alleged basis of liability against an insured, and then you measure it against what the policy says. So let's look at what was alleged by—what does the underlying complaint in this case allege? It says that Mr. Vargas was a trucker at a job site, and that he was exposed to pollutants when his truck was loaded. And when he unloaded his truck and he was not given respiratory equipment, therefore there was negligence, he is entitled to damages. That is the only pleaded theory of liability in his case. So we look at the pollution exclusion. Does the pollution exclusion encompass those allegations? The answer is, fairly conclusively, under McKinnon and under the policy language, yes, it does. There's no other theory of liability that would allow you to say— No, unless you say the dust doesn't—it wouldn't be commonly considered pollution by a reasonable insured. But the California courts have already said that it would reasonably be considered pollution, and I can give you two reasons why. One, there is the Cold Creek compost case. It was compost odors and dust that migrated from the composting facility. The court in that case had no problem saying this is environmental pollution, i.e. under McKinnon, what an insured would expect to be excluded by this policy. The second is that, as you mentioned when Ms. Evans was speaking, dust is considered a pollutant under state and federal law. And in the Ortega-Rockwary case, that was the determining factor as to whether or not an insured would expect something to be excluded as environmental pollution because it's there. It's public law. It's available to knowledge. And so because in Ortega, rocks and—I think clean field dirt was the term they used. That was listed as a pollutant under state and federal regulations. It was barred by the pollution exclusion. One thing I did want to address—Ms. Evans brought up the point, and I believe, Judge Thomas, you asked this— is what is the status of the underlying case? And forgive me if I'm misquoting, but I believe what Ms. Evans said is that the pollution exclusion applies to bar coverage for this loss, but then if you prove that there's no underlying liability, well, the burden's on you again, Mr. Ingram, so it's not fair. Either way, it's heads I win, tails you lose. That is not the state of California law. And the reason why is that because I believe it was 2018, there is a case that we cited in the briefing called All Green Electric versus Security National Insurance Company. That is directly on point. And what it says is that, on the one hand, if an exclusion applies, it bars coverage. And in that case, it found that it did. And the insured in that case also made an alternative argument. It's the same argument Mr. Ingram has made in this case, which is that I didn't actually do anything wrong, and I'm not potentially liable. I won't be found liable. I'm going to be legally exonerated. What the court in All Green Electric said is that doesn't matter. All that means—that doesn't have anything to do with the exclusion. That has to do with coverage in the first instance. What that means, your argument that you're legally innocent, if taken at its face, that means you won't have any liability, and that has no bearing on the duty to defend. That's what All Green Electric says. I think her point was somewhat different. I think she was saying that—I think she was responding to your— if I recall correctly, your response to the request for judicial notice where you said, well, there's no duty to indemnify, therefore there's no duty to defend, and I think you were overstating.  That is true in one sense, but the duty to defend, you would agree, is always broader than the duty to indemnify. The fact that the insured gets a favorable verdict doesn't really make any difference one way or the other in the duty to defend. Your Honor, you're correct. The duty to defend is— I think we're on the same page. It is per force broader than the duty to indemnify, but actually I believe you are not correct when you say the insured gets a favorable verdict. It doesn't matter. Yes, it very much does matter, and that is what All Green— Why does it matter for the duty to defend? Because— I mean, so they're exonerated on the merits. What does that have to do with coverage for the duty to defend? Because it doesn't change the nature of the allegations against the insured. What we're talking about is an affirmative defense to liability. That doesn't change what's pleaded against the insured and what they are actually sued for. I don't really see why we're—I think we're on the same page. I may be misreading it, but— I mean, we judge the duty to defend by the four corners of the complaint and perhaps any other facts that are developed during discovery that might put the insured on—or insurer on notice. The fact that the insured wins the suit doesn't have anything to do with the duty to defend. Absolutely not, and that is the point Wesco raised, and I think that's the point we're responding to with Ms. Evans' argument, and she'll have a chance to get up here and say that I'm wrong, but that's how I understand it is I believe what was said in the briefs is that, well, look, they have to prove this and they can't, so if I'm legally innocent, the pollution exclusion doesn't apply. That is true. The exclusion doesn't apply if an insured has no liability because there's nothing to indemnify. That's what All Green Electric teaches us, and it says that if there's nothing to indemnify, there's no duty to defend because they're changing— that doesn't change the theory of liability pleaded against the insured, and that's the question here is, was what Mr. Ingram was exposed to by these pleadings encompassed by the pollution exclusion? One further issue I would like to talk about in my remaining five minutes, the argument that we raised in Wesco's answering brief, and Ms. Evans talked about Ledesma, and what Ledesma says, and this is why we raised this argument, Ledesma says that in a liability insurance policy, a tort law standard of causation controls questions of causation, and here what Wesco's endorsement applies to is bodily injury that would not have occurred in whole or in part but for the actual alleged or threatened discharge of pollutants at any time. So but for standard of causation under California law is exceptionally broad. It's just if it's one link in the chain, that's but for causation. The campfire was the initial release of pollutants. Everybody knows that. That's not up for debate. That didn't injure anybody in this case. What did injure somebody in this case was the operation to clean up those pollutants created by the campfire. Those are following acts. Those are other links in the chains, and what California law is exceptionally clear about is that when an act of God creates environmental contamination and then the negligence of an insured combines to also create environmental contamination, when those two things combine, then you have liability under a but-for standard of causation. That's what we have here. That is exactly what was alleged, and so the pollution exclusion should apply without question. So I asked your opponent about the status of the underlying case, and you started to address that a bit. Is it still on post-trial motions in the trial court, or do you know? Ms. Evans would know better than I would. My understanding is that Mr. Vargas' case, his case in chief, was dismissed on summary judgment. I would imagine there being a lot of parties in that case. There's probably a lot to do to get it to a final judgment and on appeal, but I certainly have no idea. Very good. Thank you. Pending further questions from the panel, I will rest. Thank you. Thank you, counsel. Ms. Evans, you have a few minutes left. Thank you. To clarify with respect to the status of the case in the Superior Court, Series, the prime contractor, was granted summary judgment on the issue of causation. Mr. Ingram, who brought a different and separate motion for summary judgment on the issue of liability, was not granted summary judgment. So Mr. Ingram is continuing to defend that case in the trial court. It is not on appeal. So is it set for trial? It is set for trial in November of 2025, and there will be a subsequent summary judgment motion filed. Thank you. So I want to start out by the first point that was raised by Wesco's counsel, and that is the language of the total pollution exclusion. Wesco's counsel started out by reading to you verbatim the exclusion that was removed from the policy sold to Mr. Ingram. That policy language does not apply. It was superseded by the current policy language. And he argued that he says it's broader. Do you agree? He says it's broader. I do not agree. And that was the point I was just about to make. From the standpoint of the insured, it's entirely eminently reasonable to conclude that it was actually narrowed in scope. And the language of the current exclusion actually is much narrower than that. It applies only for bodily injury that would not have occurred in whole or in part, but for the actual alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants. There is no allegation in Vargas' complaint that Mr. Ingram did anything negligent with respect to any pollutant substance. None. The only allegation, and remember, this is a cross-complaint for indemnity against Mr. Ingram, the subcontractor of the prime contractor. Mr. Ingram is not named in Mr. Vargas' complaint. There are no factual allegations as to Mr. Ingram whatsoever. So the only allegation as to negligence as to series is failure to warn and failure to provide PPE. So the direct causal relationship between the allegation—well, let me put it differently. The causal relationship is between what is alleged to have caused Mr. Vargas' injuries is failure to warn and failure to provide PPE, not some sort of negligent dispersal of pollutants or negligent exposure to pollutants. So that pollution exclusion by its terms simply doesn't fit to this case. And Your Honor is correct. For the same reason, the duty to defend being broader, Mr. Ingram is the subcontractor, as I said, of the prime. The subcontractor can only be held liable on a cross-complaint for indemnity if the subcontractor has been in some way actively negligent. So Mr. Ingram's liability can't be any broader than series. So the fact that there's no allegation that series mishandled dust that caused Mr. Vargas' injuries means that this exclusion doesn't apply, particularly in a duty to defend case. With respect to the Cold Creek compost and Ortega cases, again, what the determination was, it's not the substance that determines whether or not the pollution exclusion applies. It's the common understanding of whether or not this is an environmental pollution given the history of the development of the pollution exclusion. And this is a subcontractor cleaning up debris in a wildfire after a wildfire. Why would West Coast sell a subcontractor a policy of insurance to cover its commercial operations when it takes away the entire insuring agreement by saying, well, we're not going to cover anything that might have been caused by a pollutant that you cleaned up? It renders the entire policy completely meaningless from the standpoint of the insured. So I think it would be reasonable from the standpoint of this insured who purchased this policy from this company to say that a wildfire is not what is commonly considered a traditional environmental industrial pollution. And with that, Your Honors, I would submit, unless you have a question. Thank you, Counsel. Thank you. I thank Counsel for your helpful arguments in the matter of Wesco Insurance versus Brad Ingram Instruction, and that case will be submitted.
judges: THOMAS, FORREST, MENDOZA